IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONALD A. JONES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-0920 |
| | § | |
| HOUSTON INDEPENDENT SCHOOL | § | |
| DISTRICT BOARD OF TRUSTEES | § | |
| and DANA DARDEN, in her official | § | |
| capacity and individually, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

In this suit alleging racial discrimination and other claims, Defendants Houston Independent School District Board of Trustees ("HISD") and Dana Darden (collectively, "Defendants") have filed a Motion for Summary Judgment [Doc. # 45] ("Motion"). Plaintiff Donald A. Jones has filed a Second Amended Response in Opposition to Defendants' Motion for Summary Judgment [Doc. # 65] ("Response").[1] Defendants also filed a Reply [Doc. # 67]. The Court heard oral argument on June 10, 2013. *See* Doc. # 70. The Motion is ripe for review. Having considered the parties'

---

[1] In response to Defendant's Motion, Jones filed a series of documents. *See* Docs. # 46 through # 65. The Court will treat Doc. # 65 as Jones' operative response, since all other documents appear either to contain only exhibits or to have been superseded. Defendants have objected and moved to strike many of these documents. *See* Objections to Plaintiff's Summary Judgment Evidence and Motion to Strike [Doc. # 66]. Defendants' motion to strike is **denied** as moot.

submissions, all matters of record, and applicable legal authorities, the Court determines that the Motion should be **granted**.

## I.   <u>BACKGROUND</u>

Plaintiff Donald Jones, an African-American male, was hired by HISD as a Teacher Specialist on or about August 27, 2009, and started work on or about September 9, 2009.  He was employed under a one-year probationary contract that permitted HISD to terminate the contract at the end of the one-year period "if in the Board's judgment the best interests of the District will be served by terminating the employment."   One-Year Employee Probationary Contract, signed by Donald A. Jones on Sept. 11, 2009 (Exhibit 3 to Affidavit of Paul A. Lamp (attached to Motion) ("Lamp Affidavit")) ("Contract").   The Contract further stated that, if HISD terminated the Contract, HISD was required to give notice of its decision in accordance with Section 21.103 of the Texas Education Code.  *Id.*

Jones worked for HISD for the entire 2009-2010 school year, under the supervision of Principal Dana Darden at Benbrook Elementary School.  On or about September 16, 2009, Darden transferred Jones from Teacher Specialist to the position of Instructional Coordinator, a position Jones claims was federally funded.  On or about November 30, 2009, Darden transferred Jones to the position of Literary Coach, which he also claims was federally funded.   Jones alleges that he was not properly

trained for either position, that he was required to perform job duties for which he was not hired, and that he was disciplined for failure to perform job duties for which he was not hired or trained.  *See* Third Amended Complaint [Doc. # 39] ("Complaint"), at 5-10.

Darden states that, beginning in September 2009, she had concerns about deficiencies in Jones' job performance, including his failure to complete assignments and comply with directives.  Affidavit of Dana Darden (Exhibit 2 to Lamp Affidavit) ("Darden Affidavit"), at 1, ¶ 3.  She states that she met with him "several times" in September, October, and November to discuss her concerns and offer assistance, but that the performance deficiencies continued.  *Id*. at 1, ¶¶ 3, 4.  According to Darden, after Jones' transfer to Literacy Coach in November, the performance issues continued:

> Jones' failure to complete assignments and comply with directives continued into January, February, and March 2010, and I regularly met with Jones to discuss his performance deficiencies and express my concerns and expectations.  I also repeatedly advised Jones in writing that his failure to comply with directives could result in disciplinary action up to, and including, termination.

*Id*. at 2, ¶ 5.   Darden's affidavit attaches five memoranda she wrote to Jones in February and March 2010 detailing her concerns.  *See id*., Exhibit B.

On March 30, 2010, Darden recommended that Jones' probationary contract with HISD not be renewed.  Memorandum from Darden to Jones, dated March 31,

2010 (Exhibit D-3 to Complaint) [Doc. # 43-1, at 3, on Court's ECF system].

Darden's memorandum stated in pertinent part:

> After reviewing available information and after considering your response, I conclude that failure to submit your assistance logs, and failure to follow administrative directives is unacceptable.   I am therefore[] recommending the nonrenewal of your contract with [HISD] effective at th[e] end of the term of your contract.

*Id.*

Jones was offered the opportunity to resign in lieu of nonrenewal, if he submitted a resignation letter by April 6, 2010.   *See* Email from HISD Human Resources, dated March 31, 2010 (Exhibit 4 to Lamp Affidavit).   Jones states that he submitted his resignation on April 6, 2010, Complaint, at 11, although the record contains evidence that he did not do so until April 7, 2010.   Deposition of Donald A. Jones (Exhibit 1 to Lamp Affidavit) ("Jones Deposition"), at 90-91.

On April 8, 2010, the HISD Board voted not to renew Jones' probationary contract, and thus terminated his employment at the end of the 2009-2010 school year. Letter from Terry B. Grier, Superintendent of Schools for HISD, to Jones, dated April 8, 2010 (Exhibit 5 to Lamp Affidavit) ("Termination Notice"), at 1.[2] The Termination Notice stated that Grier was authorized by HISD's Board to inform Jones of the

---

[2]     The Termination Notice explains that "termination" of a probationary contract is commonly referred to among educators as "nonrenewal" of a contract, but that Section 21.103 of the Texas Education Code uses the term "terminate."   *Id.*   For purposes of the case at bar, there is no material distinction between the terms.

Board's decision, and that "[t]his letter serves as official notice, pursuant to Section 21.103(a) of the Texas Education Code" of the termination. *Id*. On April 9, 2010, Jones acknowledged receipt of the Termination Notice by his signature, adding "I did attempt to resign in lieu of nonrenewal" and stating that he intended to file a grievance. *Id*. at 2. On May 6, 2010, he filed a Dispute Resolution Form with HISD, claiming that his termination and negative job evaluation were not justified. HISD Dispute Resolution Form, dated May 6, 2010 (Exhibit 6 to Lamp Affidavit).[3]

On May 10, 2010, HISD's Chief Human Resources Officer wrote to Jones and notified him that his resignation had been accepted by HISD in lieu of nonrenewal of his contract. *See* Letter from HISD Human Resources, dated May 10, 2010 (Exhibit A-18 to Complaint) [Doc. # 42-1, at 5, on Court's ECF system]. This letter officially accepting Jones' resignation does not refer to the Termination Notice, and the relationship between the two actions is unclear.

On May 21, 2010, Darden acted on Jones' May 6 grievance, denying his request that the nonrenewal of his contract be rescinded because Jones "submitted [a] Resignation form to [the] District, which was duly accepted." HISD Dispute Resolution Form, at 2. Jones sought further review, and a Level II conference was

---

[3]     In this grievance, Jones did not complain of improper notice of his termination, nor did he allege race or gender discrimination.

conducted on August 12, 2010.  Thereafter, on October 28, 2010, the hearing officer issued a written opinion denying Jones' grievance, finding insufficient evidence to support Jones' claim that his termination was arbitrary, capricious, discriminatory, or otherwise taken in bad faith.  Opinion of Level II Hearing Officer, dated October 28, 2010 (Exhibit 7 to Lamp Affidavit).[4]

On May 10, 2011, after holding a hearing regarding Jones' grievance, the HISD Board upheld the Level II decision.  Exhibit 8 to Lamp Affidavit.  On June 20, 2011, Jones submitted a petition for review, which he amended on July 30, 2011.  Exhibits 9 & 10 to Lamp Affidavit.

On January 25, 2012, an Administrative Law Judge ("ALJ") issued a Proposal for Decision.  Proposal for Decision, dated January 25, 2012 (Exhibit 11 to Lamp Affidavit).  The ALJ considered Jones' claim that his Termination Notice violated Section 21.103 of the Texas Education Code and Jones' rights under the Due Process Clause of the Fourteenth Amendment, concluding that Jones' arguments were unexhausted and, moreover, lacked merit.  *Id*. at 4-6.  The ALJ also considered Jones' claims of discrimination under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, but held that the Commissioner of Education lacked jurisdiction over the claim.  *Id*.

---

[4]     The hearing officer further noted that Jones had been given time to consider the resignation option but had stated he no longer wished to resign.  Instead, he preferred to continue to seek rescission of the nonrenewal of his Contract.  *Id*. at 3 n.1.

at 6-7.

The ALJ's decision denying Jones relief was recommended to the Commissioner of Education for adoption.  It is unclear from the record whether the Commissioner has taken any action on the recommendation, but the parties appear to agree that the matter was not resolved before Jones filed this suit.  *See* Motion, at 8; Complaint, at 19.  At any rate, Jones testified that he had not appealed to a district court in Travis County, as permitted by Section 7.057(d) of the Texas Education Code, for review of a decision by the Commissioner.  *See* Jones Deposition, at 125.

On March 27, 2012, Jones filed suit in this Court.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex*,

477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most

favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). *overruled on other grounds, Grand Isle Shipyards, Inc., v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir.2009). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves*

*Brokerage Co.*, 336 F.3d at 412-413).  The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, although the Court may consider all materials in the record when deciding a summary judgment motion, "the court need consider only the cited materials." Fed. R. Civ. P. 56(c)(3).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of

evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotation marks omitted).

## III.   ANALYSIS

Jones in his Third Amended Complaint [Doc. # 39] ("Complaint") asserts five claims: (1) disparate treatment based on race and gender, in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the United States Constitution; (2) failure to provide proper notice of the non-renewal of Jones' probationary contract with HISD, in violation of the procedural due process guarantees of the Constitution, Section 1983, and the Texas Education Code; (3) violation of Jones' procedural due process rights and Section 1983 due to HISD's policy of providing improper notice of non-renewals of contracts; (4) failure to provide Jones with a renewed probationary contract despite HISD's noncompliance with its own termination procedures, in violation of Section 1983 and the Equal Protection Clause; and (5) intentional discrimination against Jones on the basis of race and gender, in violation of Section 1983 and Title VI of the Civil Rights Act, 42 U.S.C. § 2000d.

### A.   Discrimination Claim Under Equal Protection Clause

Jones claims that he was subject to discrimination on the basis of his race and gender during his employment with HISD, and that the discrimination violated the Equal Protection Clause of the Fourteenth Amendment made applicable through

Section 1983.[5]   He alleges that he was treated differently from two other HISD employees, Angela Stevens (a white female) and Kathy Filer (a female).

An equal protection claim based on race or gender must be supported by evidence that the actions taken against the plaintiff were motivated by discriminatory intent.[6]   The typical equal protection claim challenges a governmental classification based on race, gender, or other categories.[7]   Jones' claim in this case is not a typical

---

[5]   *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .").

[6]   *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979)  ("[E]ven if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause *only* if that impact can be traced to a discriminatory purpose") (emphasis added); *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012) ("To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that she received treatment different from that received by similarly situated individuals and that the unequal treatment ***stemmed from a discriminatory intent***.") (internal quotation marks, alteration, and citations omitted) (emphasis added); *Kelley v. City of Wake Vill., Tex.*, 264 F. App'x 437, 443 (5th Cir. 2008) (to sustain a gender-based equal protection claim, a plaintiff must show "'that discrimination against women was a motivating factor'") (quoting *Shipp v. McMahon*, 234 F.3d 907, 914 (5th Cir. 2000)).

[7]   *See*, *e.g.*, *Engquist v. Ore. Dep't of Agri.*, 553 U.S. 591, 601 (2008) ("Our equal protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others") (internal citation and quotation marks omitted); *Feeney*, 442 U.S. at 272 ("Certain classifications . . . in themselves supply a reason to infer antipathy. Race is the
(continued...)

equal protection claim because he does not allege a "classification" that is based on race or gender, nor does he allege a facially neutral classification that is a pretext for discrimination against African-Americans or men.  Rather, he alleges that Defendants subjected him individually to discrimination, and that the discrimination was based on his race and gender.[8]  Although his allegations have similarities to a typical claim of employment discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, Jones does not bring a Title VII claim.[9]

Jones' briefing on his equal protection claim does not cite to any specific facts that support his claim of intentional discrimination.  Rather, he asserts that he has

---

[7]    (...continued)
paradigm.   A racial classification, regardless of purported motivation, is presumptively invalid and can be upheld only upon an extraordinary justification. This rule applies as well to a classification that is ostensibly neutral but is an obvious pretext for racial discrimination." (internal citations omitted)).

[8]    In certain circumstances, a plaintiff may bring an equal protection claim as a "class of one" who is singled out by the government for different treatment, when a rational basis for the difference in treatment is lacking.  *See Engquist*, 553 U.S. at 601-02; *C.H., II ex rel. L.H. v. Rankin Cnty. Sch. Dist.*, 415 F. App'x 541, 546-47 (5th Cir. 2011).   However, "class of one" claims are not available to public employees. *Engquist*,  553 U.S. at 605.   Moreover, Jones has disavowed any such claim.  *See* Response, at 19 ("Plaintiff does not claim to be in a class of one.  Rather the Plaintiff pleads and asserts that is is [sic] a member of the protected class of 'African-American males.'")

[9]    Jones' counsel stated unequivocally at a hearing on June 6, 2013, that Jones does not bring a Title VII discrimination claim.  Rather, Jones has brought a claim under Title VI, 42 U.S.C. § 2000d, which is discussed later in this Memorandum.

"provided several examples of continuous discriminatory treatment done intentionally" in the period from September 2009 to May 2010, citing generally to his Complaint. *See* Response, at 18-19. The Response does not identify any examples of discriminatory treatment, let alone discrimination based on Jones' race or gender, and provides no specific cites to the thirty-seven page Complaint.

Jones' Complaint alleges that he was not trained for his positions as Instructional Coordinator or Literary Coach, but that Darden nevertheless expected him to perform the job duties in those positions and disciplined him when he failed to do so. Complaint, at 5-7, 11. Jones further alleges that Angela Stevens, a white female in the Literary Coach position, and Kathy Filer, a female in the Instructional Coordinator position, were given proper training, adequate assistance, realistic time limits and goals, adequate equipment and office space, and daily communication and coordination with Darden. *Id*. at 9-10. Jones alleges also that Stevens and Filer were "not disciplined for non-job related assignment and duties," *id*. at 9 (Stevens), 10 (Filer); and were given evaluations and assignments that "were preferential and subjectively impartial as compared to Donald Jones," *id*. at 9 (Stevens) and 10 (Filer). Jones has not provided any evidence to support these allegations in his Complaint, and mere allegations cannot defeat summary judgment. *See*, *e.g.*, *Diamond Offshore*, 302 F.3d at 545 n.13; *Delta & Pine Land*, 530 F.3d at 399. More fundamentally, none of

these allegations—even if proven—would demonstrate that Defendants were motivated by Jones' race or gender, as required for an equal protection claim.[10]

Moreover, Jones' testimony at deposition contradicts his allegations in the Complaint and his own affidavit. Jones testified, for example, that he did not have knowledge of Stevens' work experience, training, job performance or duties, meetings with Darden, or whether Darden had disciplined Stevens. Jones Deposition, at 130-32. He further testified that he did not have knowledge of Filer's training, work performance, meetings with Darden, or whether Filer had been disciplined. *Id.* at 133-36, 140-41, 144, 146-49. When asked about Darden's motivation for the employment actions about which Jones complains, Jones testified that he did not know whether Darden took his race into account. *Id.* at 59. Jones also testified that Darden, who also is African-American, had never made comments to him related to his race. *Id.* Additionally, Jones has offered no evidence of discrimination by Darden or others based on his race. When asked about Darden's treatment of Jones in comparison with

---

[10]     Jones recently signed an affidavit on April 9, 2013, after Defendants moved for summary judgment. *See* Jones Affidavit, dated Apr. 9, 2013 [Doc. # 57-1]. Defendants have objected to this affidavit. *See* Doc. # 66. The affidavit reiterates allegations that Stevens and Filer were treated differently from Jones. *See* Jones Affidavit, at 1-2, ¶¶ 5-8. The affidavit does not allege or provide evidence of intentional discrimination, and makes no mention of race or gender. Because the Court does not rely on the affidavit for any holdings adverse to Defendants, Defendants' objections are moot.

Filer, Jones testified that he did not know whether the differences were because of his gender. *Id*. at 74-75. In sum, he has offered no evidence of disparate treatment based on his gender.  Because Jones has not proffered competent summary judgment evidence that Defendants' actions against him were motivated by discriminatory animus, his equal protection claim fails.[11]

Furthermore, Jones' claim fails under the standards for liability under Section 1983.  For Jones' equal protection claim against Darden in her official capacity, he is required to identify an "official policy" on the part of HISD that brought about the constitutional wrong.[12]  Jones alleges the "official policy" in this case is the HISD's Board of Trustees' "unwritten[] policy, practice, custom and procedure of allowing

---

[11]    The absence of competent evidence supporting Plaintiff's allegations is sufficient to warrant summary judgment.  However, the Court further notes that Defendants have presented evidence showing that the actions about which Jones complains were taken because of deficiencies in his job performance. *See* Darden Affidavit, at 1-2, ¶¶ 3-6. Darden states that she did not consider Jones' race or gender when making "any decision regarding his employment," *id*. at 2, ¶ 7, and her affidavit attaches multiple memoranda to Jones during the 2009-2010 school year detailing her ongoing concerns about Jones' job performance. *Id*., Exhibit B.

[12]    To establish municipal liability under Section 1983, a plaintiff must show three elements: a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001).  Governmental liability cannot be based on *respondeat superior*; rather, governmental liability can be created only when the wrong is effected pursuant to an official policy. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 470-71 (5th Cir. 1999); *see Piotrowski*, 237 F.3d at 578; *Kelley*, 264 F. App'x at 443.

Principals including Darden to create and implement unfair, discriminatory policies, procedures, practices and customs for training and development of teachers in violation of State and Federal Law." Response, at 20. He further asserts in a conclusory fashion that HISD's Board of Trustees and Superintendent Grier "deliberate[ly] created and implemented policies, practices and customs . . . regarding the training which had the direct result of denying Plaintiff of his rights." *Id.* at 21. Jones cites no evidence in the summary judgment record supporting either of his assertions of an HISD policy, and the Court is aware of nothing supporting either one.[13] Because Jones has failed to identify any specific evidence that demonstrates a genuine issue of fact that there was an official HISD policy that was a moving force for a constitutional wrong against him, summary judgment is appropriate in Defendants' favor on this additional ground.[14]

---

[13]     It is not the role of the Court to sift through the record in search of evidence to support a party's opposition to summary judgment. *Malacara*, 353 F.3d at 405; FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

[14]     Jones also brings an equal protection claim against Darden in her individual capacity. As a government official performing discretionary functions, Darden is immune from individual liability unless her conduct was plainly incompetent or knowingly violated Jones' clearly established rights. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005). Because Darden has asserted qualified immunity, the burden shifts to Jones to rebut the defense. *Cousin v. Small*, 325 F. 3d 627, 632 (5th Cir. 2003); *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489-90 (5th Cir. 2001). For the reasons stated above, Jones' summary judgment evidence does
(continued...)

Summary judgment is granted for Defendants on Jones' claims under the Equal Protection Clause and Section 1983.

### B.    Improper Notice of Termination

Jones argues that the Termination Notice he received violated his procedural due process rights because it was signed by HISD Superintendent Terry Grier, rather than by the Board of Trustees.   Jones relies for this argument on Section 21.103(a) of the Texas Education Code.  In 2010, when Jones was a probationary employee, the statute provided:

> The board of trustees of a school district may terminate the employment of a teacher employed under a probationary contract at the end of the contract period if in the board's judgment the best interests of the district will be served by terminating the employment. The ***board of trustees*** must give notice of its decision to terminate the employment to the teacher not later than the 45th day before the last day of instruction required under the contract.

TEX. EDUC. CODE § 21.103(a) (2006) (superseded) (emphasis added).[15]  The Court notes that in the Termination Notice received by Jones, Grier specifically stated that he had "been authorized" to notify Jones that "the Board has determined and recited

---

[14]    (...continued)
not establish a genuine issue of material fact that Darden engaged in conduct that violated Jones' clearly established rights under the Equal Protection Clause.

[15]    The current statute requires only ten days notice of a decision to terminate. TEX. EDUC. CODE § 21.103(a) (2011).

that the best interests of the District will be served by terminating the employment relationship with you."  Termination Notice, at 1.  Furthermore, the Notice includes the statement that it is the official notice pursuant to Section 21.103(a).  The only alleged flaw in the Notice that Jones identifies is that the Notice was signed by Grier rather than by the "board of trustees."

The Fifth Circuit has stated that the "essential requirements" of procedural due process are "notice and an opportunity to respond."  *Finch v. Fort Bend Indep. Sch. Dist.,* 333 F.3d 555, 562 (5th Cir. 2003).[16]  In this case, Jones indisputably received notice of the employment action against him.  The Termination Notice was accurate as to HISD's reasons for the action, and it was timely. Although Jones alleges that Grier's signature was insufficient, Grier plainly was authorized by the Board to sign

---

[16] *See Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotation marks and citation omitted)).  *See also Ioannides v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 418 F. App'x 269, 270-71 (5th Cir. 2011) (because public employee was afforded a hearing and the opportunity to meet with school's president, the university did not violate his procedural due process rights); *Holden v. Knight*, 155 F. App'x 735, 738 (5th Cir. 2005) ( "Procedural due process entitles a public employee with a property right in his employment to notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present his side of the story.  The essential requirements of procedural due process under the Constitution are notice and an opportunity to respond" (internal quotation marks, footnotes, and citations omitted)); *Caine v. Hardy,* 943 F.2d 1406, 1411–12 (5th Cir.1991) (en banc) ("Procedural due process is a flexible concept whose contours are shaped by the nature of the individual's and the state interests in a particular deprivation.").

the Termination Notice on their behalf, as stated in the Notice itself.[17]  The Board's defense of the decision through the administrative process and this suit is further evidence of this authorization or, at the very least, ratification of the decision.  As noted by the ALJ, the Board is a "corporate person" and must give notice through a "real individual."  Proposal for Decision, at 6.[18]  Most significantly, Jones has not alleged, and there is no evidence, that he was not afforded an opportunity to be heard.  To the contrary, as set forth in the Background section above, Jones fully availed himself of HISD's administrative grievance process.[19]  Jones has not presented any competent summary judgment that he was deprived of the "essential" due process requirements of notice and opportunity to be heard.  *See Finch,* 333 F.3d at 562.[20]

---

[17]     Jones provides no evidence to contravene this representation.

[18]     The ALJ found that notice from Grier, the chief executive officer for HISD, sufficed as notice from the Board under Section 21.103(a).  *Id.* (citing Tex. Educ. Code § 11.201(a)).

[19]     Section 21.103(a) states that the Board's decision "is final and may not be appealed."  Tex. Educ. Code § 21.103(a).  The Termination Notice addressed to Jones also said that the decision could not be appealed.  Nevertheless, Jones pursued his grievance through several administrative levels.

[20]     Jones does not specify in his Complaint whether he brings a substantive or procedural due process claim.  Because he alleges that he rights were violated due to HISD's allegedly improper Termination Notice, the Court construes and has addressed his claim as a procedural due process claim.  However, a substantive due process claim also would fail, for the reasons stated previously in analyzing Jones' equal protection and procedural due process claims.  A public employee bringing a substantive due

(continued...)

Summary judgment is granted for Defendants on Jones' procedural due process "lack of notice" claim.[21]

## C.     Unconstitutional Policy Regarding Notices of Termination

Count III of Jones' Complaint alleges that HISD's policy of allowing Grier to sign a notice of nonrenewal under Section 21.103(a) violates the guarantee of due process.   In particular, Jones alleges that the policy violates his due process rights because Section 21.103 "clearly provides that the written notification 'must' come from the Board of Trustees" and this requirement is "critically and procedurally important."   Complaint, at 27.   For the reasons set forth above analyzing Jones' due

---

[20]     (...continued)
process claim must show that the employer's termination of that interest was "arbitrary or capricious." *Bolton v. City of Dallas,* 472 F.3d 261, 263 (5th Cir. 2006); *Pastorek v. Trail,* 248 F.3d 1140, at *5 (5th Cir. 2001).   In this case, Defendants have presented the Darden Affidavit detailing Jones' job performance deficiencies, and Darden's sworn statement is corroborated by memoranda to Jones over several months detailing the deficiencies and warning him of possible termination.   *See* Darden Affidavit, at 1-2, ¶¶ 3-5; *id.* at Exhibit B (memoranda).   Jones has presented no competent summary judgment evidence countering this showing, or that his termination was "arbitrary or capricious."   His own subjective opinion of his performance is insufficient.   Therefore, to the extent Jones brings a substantive due process claim, the claim also fails on summary judgment.

[21]     The parties have raised other issues, including whether Jones has established an official municipal policy sufficient for liability under Section 1983, whether Jones has established a property interest in a renewed probationary contract, and whether Jones exhausted all required administrative proceedings before filing this suit.   The Court does not address these issues because none of them, even if proven by Jones, would be sufficient to defeat summary judgment for Defendants.

process claims alleged in Count II, *see* Section III.B, *supra*, such as the uncontroverted evidence in the record that Jones received notice of the action against him and was afforded ample opportunity to be heard, Defendants are entitled to summary judgment on Count III.

### D.  Failure to Provide New Probationary Contract

In Count IV, Jones alleges that Defendants' failure to provide him with a new probationary contract under Section 21.103 violates his rights under the Equal Protection Clause and Section 1983.  Complaint, at 30.  For the reasons stated above in the analysis of Jones' claims above, *see* Section III.A, *supra*, Jones has failed to demonstrate a genuine issue of material fact that the nonrenewal of his contract violated the guarantees of the Equal Protection Clause.  Summary judgment is granted for Defendants on Jones' Count IV.

### E.  Intentional Discrimination under Title VI of the Civil Rights Act

In Count V, Jones alleges intentional discrimination on the basis of race and gender, in violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d *et seq*. Title VI prohibits discrimination by programs that receive federal funding:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C.A. § 2000d.   The Supreme Court has stated clearly that Title VI prohibits only intentional discrimination.   *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). *See Pathria v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, No. 13-50068, 2013 WL 3090280 (5th Cir. June 20, 2013).   "To prevail on a claim for relief under Title VI, a private litigant must prove: (1) that the defendant engaged in *intentional* discrimination based on race, color, or national origin; and (2) that the defendant received federal financial assistance."   *Pathria*, 2013 WL 3090280, at *1 (emphasis in original).

As stated previously in analyzing his equal protection claim, *see* Section III.A, *supra*, Jones has not proffered any competent summary judgment evidence that Defendants intentionally discriminated against him on the basis of race or any other impermissible characteristic.   Jones alleges that two other employees were treated more favorably than he:  Stevens, whom he identifies as white, and Filer, whose race is unidentified.   However, he testified at deposition that he had no knowledge or information showing that he had been treated differently on account of his race or gender.   *See* Section III.A, *supra* (citing Jones Deposition, at 59, 74-75, 130-32, 133-36, 140-41, 144, 146-49).[22]   Because Jones has not provided evidence of intentional

---

[22]   Moreover, Jones never contradicts with admissible evidence the Darden Affidavit and its attached multiple memoranda, which   detailed problems with Jones' job
(continued...)

discrimination on the basis of race,[23] his Title VI claim fails.[24]

Jones' failure to provide any evidence of intentional discrimination also defeats his claim against Darden in her individual capacity.  The Court therefore need not reach the issue of whether Darden is protected by qualified immunity from Jones' discrimination claims against her.  *See Davis*, 406 F.3d at 380 (qualified immunity protects government officials unless the official's conduct was plainly incompetent

---

[22]     (...continued)
         performance and contained warnings that continued problems could lead to nonrenewal of his contract.  *Id.* (citing Darden Affidavit).

[23]     Jones, in his briefing, argues that, because direct evidence of discriminatory intent is lacking, he may prove illegal discrimination under Title VI by using the burden-shifting framework applicable to Title VII claims.  *See Quarles v. Oxford Mun. Separate Sch. Dist.*, 868 F.2d 750, 754 n. 3 (5th Cir. 1989);  *Wade v. Miss. Co-op. Extension Serv.*, 528 F.2d 508, 510 n. 1 & 517 (5th Cir. 1976).  This Title VII framework requires first that a plaintiff establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).  If plaintiff does so, the burden shifts to the defendant to articulate a non-discriminatory reason for its action against the plaintiff.  If the defendant does so, the presumption of discrimination dissolves, and plaintiff then bears the burden to establish intentional discrimination.  *Lee*, 574 F.3d at 259.  In this case, even assuming that Jones could establish a *prima facie* case under Title VII authority, Defendants have articulated a nondiscriminatory reason for the nonrenewal of Jones' contract, namely, his job performance deficiencies detailed in the Darden Affidavit and attachments.  Jones has failed to demonstrate a genuine issue of material fact on intentional discrimination, his ultimate burden under Title VI.  Therefore, even applying the burden-shifting standards applied to Title VII cases, Defendants would be entitled to summary judgment on Jones' Title VI claim.

[24]     Jones claim under Section 1983 also fails.  As stated previously, a plaintiff bringing a Section 1983 claim must show an "official policy" that brought about the alleged violation.  *See Piotrowski*, 237 F.3d at 578.  Jones has not provided evidence of any specific policy of HISD that satisfies Section 1983's requirements.

or knowingly violated the plaintiff's clearly established rights); *see* authorities cited in footnote 14, *supra*.  The Court also does not reach the issue of whether Jones has demonstrated a genuine issue of material fact that his positions were federally funded, a necessity for invocation of Title VI protections.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 45] is **GRANTED**.  All Plaintiff's claims are **DISMISSED with prejudice**.  It is further

**ORDERED**  that Defendants' Objections to Plaintiff's Summary Judgment Evidence and Motion to Strike [Doc. # 66] are **DENIED as moot**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **15<u>th</u>** day of **November, 2013**.

_____
Nancy F. Atlas
United States District Judge